J-S44033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LISA LEE SHILOH | : | |
| | : | |
| Appellant | : | No. 485 MDA 2020 |

Appeal from the Order Entered December 19, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000635-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LISA LEE SHILOH | : | |
| | : | |
| Appellant | : | No. 486 MDA 2020 |

Appeal from the Order Dated December 19, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000645-2010

BEFORE: BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED OCTOBER 28, 2020**

In these consolidated appeals,[1] Lisa Lee Shiloh (Appellant) appeals from

the order entered in the Adams County Court of Common Pleas, following a

_____

[1] This Court consolidated these appeals *sua sponte* by order entered April 15, 2020.  Order, 4/15/20.

remand by this Court,[2] dismissing her serial petition filed pursuant to the Post Conviction Relief Act[3] (PCRA). Appellant seeks collateral relief from her jury convictions of delivery of controlled substances (six counts), criminal conspiracy, criminal use of a communication facility (four counts), and endangering the welfare of a child[4] at trial court Docket No. CP-01-CR-645-2010 (Docket 645), and one count of possession with intent to deliver cocaine[5] at trial court Docket No. CP-01-CR-635-2010 (Docket 635). On appeal, Appellant contends the PCRA court erred in rejecting her claims that: (1) her petition met the "newly discovered facts" exception to the PCRA timing requirements; (2) three witnesses provided false testimony at her trial regarding their agreements with the Commonwealth in exchange for their testimony; and (3) the prosecutor committed a **Brady**[6] violation when they failed to inform her of the favorable plea agreements with those witnesses and permitted those witnesses to testify falsely at her trial. For the reasons below, we affirm.

---

[2] **Commonwealth v. Shiloh**, 170 A.3d 553 (Pa. Super. 2017).

[3] 42 Pa.C.S. §§ 9541-9546.

[4] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 903, 7512(a), 4303, respectively.

[5] 35 P.S. § 780-113(a)(30).

[6] **Brady v. Maryland**, 373 U.S. 83 (1963).

The relevant facts and procedural history underlying these appeals were recounted in a prior published opinion of this Court as follows:

On February 1, 2011, a jury convicted Appellant of [the above stated offenses] in connection with Appellant's participation in a drug operation. Relevant to this appeal, Appellant's sister, Stacy Stitely, was also involved with, and faced charges for her role in, the drug operation. Ms. Stitely testified for the Commonwealth at Appellant's trial.[7] The trial court sentenced Appellant on April 21, 2011, to an aggregate term of 14–30 years' imprisonment. Appellant did not file a direct appeal.

On November 17, 2011, Appellant timely filed a *pro se* PCRA petition. The court appointed counsel on November 23, 2011, who filed an amended PCRA petition on April 4, 2012, and a second amended petition on May 11, 2012. Following a PCRA hearing, the court denied PCRA relief on February 12, 2013. This Court

---

[7] At trial, the Commonwealth asked Stitely: "Have any specific deals or promises been made to you as a result of your testimony here today?," to which she replied, "No." N.T., 1/31/11, at 250. She also denied she was "hoping [to] get a better deal by testifying[.]" *Id.* On cross-examination, the following exchange occurred:

[Appellant's counsel:] It's your testimony today that you're not hoping to help yourself out by being here in Court here today?

[Stitely:] No.

[Appellant's counsel:] You don't expect anything in return?

[Stitely:] No.

[Appellant's counsel:] You wouldn't like to help yourself out?

[Stitely:] What do you mean?

[Appellant's counsel:] Wouldn't you like it if this benefited you and you got a better deal because of your testimony?

[Stitely:] It would go easier, yeah, but I know I'm not going to, so . . .

*Id.* at 252-53.

- 3 -

affirmed the decision on November 20, 2013. *See Commonwealth v. Shiloh*, [357 MDA 2013 (unpub. memo)] (Pa. Super. 2013).

Appellant filed her second PCRA petition *pro se* on January 17, 2014. Following appropriate notice pursuant to Pa.R.Crim.P. 907, the court denied relief on February 4, 2015. This Court affirmed the denial of PCRA relief on December 18, 2015. *See Commonwealth v. Shiloh*, [357 MDA 2015 (unpub. memo)] (Pa. Super. 2015). Appellant filed another PCRA petition on March 28, 2016, which she withdrew on May 19, 2016.

On June 23, 2016, Appellant filed the current serial *pro se* PCRA petition, asserting the "newly-discovered fact" exception to the PCRA timeliness requirement. Specifically, Appellant claimed, *inter alia*, that on May 3, 2016, she received an affidavit from her sister, Ms. Stitely, stating that the investigating officer in Appellant's case had promised to help Ms. Stitely get a deal in exchange for her cooperation and testimony against Appellant. Appellant attached a copy of the affidavit to her PCRA petition. In her affidavit dated April 26, 2016, Ms. Stitely states:

> I Stacy Stitely was in Adams County Prison for [a] drug raid in Littlestown Pa on June 15, 2010. Within a week or two [Pennsylvania State Trooper James] O'Shea came to Adams County Prison [and] wanted to talk with me about what they knew and what I knew about what was happening with Carroll Lescalleet Sr., Kirk [Shiloh[8]] & [Appellant,] all the people dealing with this case. At that time my boyfriend Carroll Lescalleet Sr. was also in Adams County Prison. [Trooper] O'Shea told me if I'd talk with him he'd help get Carroll released at his bail hearing because he knew we had a young son at home and when the time came for me he would help me get a deal. So I talked with him and on June 23, 2010, Carroll Lescalleet Sr. was released from Adams County Prison. On February 1, 2011[,] I testified for him against [Appellant] and on August 11, 2011 I was sentenced to 18 months–5 year[s] because I cooperated and testified.

Appellant asserted in her PCRA petition that the agreement between her sister and Trooper O'Shea constituted a "newly-discovered fact," previously unknown, because Ms. Stitely

---

[8] Kirk Shiloh is Appellant's husband. N.T., 1/31/11, at 17.

expressly denied the Commonwealth had offered her any promises or deals in exchange for her testimony as a Commonwealth witness at Appellant's trial. Appellant also attached to her PCRA petition a copy of her sister's August 22, 2011 negotiated guilty plea colloquy transcript, in which the Commonwealth states it offered Ms. Stitely a sentence slightly into the mitigated range based in part on her cooperation in Appellant's case and testimony against Appellant. Appellant insisted she had no reason to suspect her sister lied at Appellant's trial, when she denied the existence of a deal. Appellant claimed she could not have discovered the deal between Ms. Stitely and the Commonwealth sooner, even with the exercise of due diligence.

On October 3, 2016, the court issued notice of its intent to dismiss Appellant's petition without a hearing per Pa.R.Crim.P 907. Appellant responded *pro se*. The PCRA court denied relief on November 30, 2016. Appellant timely filed a *pro se* notice of appeal on December 14, 2016. . . .

**Commonwealth v. Shiloh**, 170 A.3d 553, 555–56 (Pa. Super. 2017).

On appeal, a panel of this Court vacated the order dismissing Appellant's PCRA petition, and remanded for an evidentiary hearing. **Shiloh**, 170 A.3d at 560. The panel explained that, although the information concerning Stitely's plea agreement was of public record, the Pennsylvania Supreme Court, in **Commonwealth v. Burton**, 158 A.3d 618 (Pa. 2017), held "[T]he presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) does **not apply** to *pro se* prisoner petitioners." **Shiloh**, 170 A.3d at 558, *quoting* **Burton**, 158 A.3d at 638.[9] Therefore, the panel concluded a hearing was necessary to determine

---

[9] We note that on October 1, 2020, the Pennsylvania Supreme Court expressly "disavow[ed] the public record presumption" and overruled all prior decisions, including its own, which "relied upon and applied that presumption to reject a petitioner's claim." **Commonwealth v. Small**, ____ A.3d ____, ____ 8 EAP

"whether Appellant could have discovered the alleged arrangement between her sister and Trooper O'Shea and the Commonwealth sooner with the exercise of due diligence." **Shiloh**, 170 A.3d at 560. Thus, the **Shiloh** Court vacated the order denying relief, and remanded the case to the PCRA court for an evidentiary hearing to determine: (1) "if Trooper O'Shea's alleged offer and the Commonwealth's 'deal' were unknown to Appellant[;]" (2) "the details of any alleged agreement(s)[;]" and (3) "whether Appellant could have discovered this information sooner with the exercise of due diligence," considering her access to public records pursuant to **Burton**. **Id.**

Upon remand, Barbara Jo Entwistle, Esq., was appointed as new counsel, and the PCRA court scheduled a hearing for November 28, 2017. The hearing date was continued twice upon the request of Attorney Entwistle. In her second request, Attorney Entwistle also stated that she intended to file an amended petition based upon her discovery that other Commonwealth witnesses may have received favorable plea agreements from the Commonwealth in exchange for their testimony against Appellant. **See** Appellant's Motion for Continuance, 1/12/18, at ¶ 21. The PCRA court entered an order on January 16, 2018, continuing the hearing until March 27th, and

_____

2019, 26 (Pa. Oct. 1, 2020) ("[B]ecause the public record presumption stands in tension with the plain language of the newly discovered fact exception, because we have recognized its deficiencies already in **Burton**, and because the instant appeal presents a direct challenge to its continued application, it is our prerogative and our duty to steer our precedent back toward the language of the statute from which we have strayed.") (citation and footnotes omitted).

granting Appellant until February 23rd to file an amended petition. Counsel filed a supplemental petition on February 22, 2018, asserting that the Commonwealth committed *Brady* violations when it failed to disclose at the time of Appellant's trial that three witnesses — Stacey Stitely, John McGlaughlin, and Bryan Louey — were promised favorable consideration by the Commonwealth in exchange for their testimony against Appellant. *See* Appellant's Supplemental PCRA Petition, 2/22/18. Following a hearing on March 27, 2018, the PCRA court entered the underlying order on December 18, 2018, denying Appellant relief. This timely appeal followed.[10]

Appellant raises the following three issues for our review:

[1] Did the Lower Court err in finding that Appellant did not meet the due diligence requirement of the "newly discovered" evidence exception set forth in 42 Pa.C.S.A. Section 9545(b)(1)(ii) as there was no reason to know that witnesses who testified at her trial had agreements with the Commonwealth when the witnesses testified that there were no agreements until contacted by Stacy Stitely?

[2] Did the Lower Court incorrectly hold that Stacy Stitely, John McGlaughlin and Bryan Louey did not testify falsely at trial as to

---

[10] We note that this Court initially quashed this appeal because Appellant's single notice of appeal from an order disposing of claims at two trial court dockets violated the Pennsylvania Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018) (mandating that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed"). *See Commonwealth v. Shiloh*, 34 MDA 2019 (unpub. memo.) (Pa. Super. Oct. 24, 2019). Thereafter, on December 2, 2019, Appellant filed a *pro se* PCRA petition seeking reinstatement of her appeal rights *nunc pro tunc*, which the PCRA court granted by order entered February 12, 2020. Appellant then filed separate notices of appeal at each trial court docket number in compliance with *Walker*. Appellant also complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

the existence of a plea agreement in exchange for their testimony against Appellant?

[3] Did the Lower Court err when it denied Appellant's claim of . . . **Brady** violations when the PCRA record clearly disclosed that the District Attorney had offered some form of consideration to Commonwealth witnesses, failed to inform trial counsel of what the consideration consisted of and then allowed such three witnesses to testify falsely that there were no plea agreements in violation of United States Supreme Court precedents?

Appellant's Brief at 4-5.

Our standard of review of an order denying PCRA relief is well-established. "[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" **Commonwealth v. Mitchell**, 141 A.3d 1277, 1283–84 (Pa. 2016) (citations omitted). Furthermore, "[t]he PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Cruz**, 223 A.3d 274, 277 (Pa. Super. 2019) (citation omitted).

Preliminarily, we note there is no dispute that the present petition, filed on June 23, 2016, was untimely pursuant to Section 9545(b). **See** 42 Pa.C.S. § 9545(b)(1) (any petition, including second or subsequent petition, must be filed within one year of the date judgment of sentence is final). Here, Appellant's judgment of sentence was final on May 23, 2011[11] — thus, the

---

[11] A panel of this Court determined Appellant's prior PCRA petition, filed in January of 2014, was similarly untimely. **See Shiloh**, 357 MDA 2015 (unpub. memo. at 4-5 & n.5) (explaining Appellant's judgment of sentence was final on May 23, 2011, 30 days after she was sentenced and "her time to file a direct appeal with this Court expired[;]" thirtieth day (May 21, 2011) fell on a Saturday, so Appellant "had until that Monday to file a notice of appeal").

present petition, filed more than five years later is untimely on its face. Nevertheless, an untimely petition may be considered if one of the three timeliness exceptions applies. 42 Pa.C.S. § 9545(b)(1)(i)-(iii). A petition invoking one of the exceptions must be filed "within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[12] In the present matter, Appellant invoked the "newly-discovered facts" exception set forth in Section 9545(b)(1)(ii).

Under this subsection, a petitioner must plead and prove "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). "[T]he focus of this exception 'is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts.'" ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) (citation omitted). Furthermore, we note Section 9545(b)(1)(ii) is a jurisdictional threshold, which "does **not** require any merits analysis of an underlying after-discovered-evidence claim." ***Id.*** at 177 (emphasis added). "Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim" pursuant to Section 9543(a)(2)(vi). ***Id.*** at 176. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (providing relief under the PCRA if a

---

[12] This subsection was amended in 2018 to provide petitioners with one year to invoke a timeliness exception. However, the amendment applies only to "claims arising on Dec. 24, 2017 or thereafter." 42 Pa.C.S. § 9545(b)(2); Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, effective in 60 days. Thus, is it not applicable here.

petitioner pleads and proves "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced").

At the outset, we note that our review is limited by this Court's 2017 remand. In **Commonwealth v. Sepulveda**, 144 A.3d 1270 (Pa. 2016), our Supreme Court held:

> [A] PCRA court does not have discretion to treat new claims raised by a PCRA petitioner as an amended PCRA petition following remand from [an appellate court] unless such amendment is **expressly authorized** in the remand order. . . . Following a full and final decision by a PCRA court on a PCRA petition, that court no longer has jurisdiction to make any determinations related to that petition unless, following appeal, the appellate court remands the case for further proceedings in the lower court. In such circumstances, the PCRA court may only act in accordance with the dictates of the remand order. **The PCRA court does not have the authority or the discretion to permit a petitioner to raise new claims outside the scope of the remand order and to treat those new claims as an amendment to an adjudicated PCRA petition**.

**Id.** at 1280 (footnotes omitted and emphases added). **See id.** at 1279 ("We have consistently held that in the absence of permission from [the appellate] Court, a PCRA petitioner is not entitled to raise new claims following our remand for further PCRA proceedings.").

In the present case, we conclude "the PCRA court exceeded the scope of our remand order and the scope of its authority" when it granted Appellant permission to file a supplemental petition, which raised new claims, **after** the appeal was remanded. **See Sepulveda**, 144 A.3d at 1281. As noted above, this Court's remand was limited as follows:

- 10 -

> Consistent with the dictates of **Burton**, the best resolution of this case is to remand it for an evidentiary hearing for the [PCRA] court to decide if Trooper O'Shea's alleged offer and the Commonwealth's "deal" were unknown to Appellant. Although Ms. Stitely's affidavit is not necessarily inconsistent with her trial testimony, it is brief and does not disclose the details of her alleged understanding with Trooper O'Shea or whether Trooper O'Shea or the Commonwealth specifically promised her anything in exchange for her testimony against Appellant. Upon remand, the court must learn the details of any alleged agreement(s) and decide if they were as alleged and whether Appellant could have discovered this information sooner with the exercise of due diligence, including an assessment of Appellant's reasonable access to public records. . . .

**Shiloh**, 170 A.3d at 560 (citation omitted). Accordingly, we will not consider any claims raised in the supplemental petition filed on February 22, 2018, **after** this Court's remand, and in particular, Appellant's allegations that Bryan Louey and John McGlaughlin received consideration for their testimony, which was withheld by the Commonwealth.[13]

As noted **supra**, this Court remanded the case to the PCRA court for an evidentiary hearing to determine: (1) the details of any "alleged agreement(s)" between the Commonwealth and Stitely as consideration for her testimony, and (2) whether, considering Appellant's access to public

---

[13] We note that in **Sepulveda**, like here, the case was remanded for further consideration of a specific claim — *i.e.*, whether the petitioner was prejudiced by trial counsel's failure to investigate and present evidence at his penalty hearing. **See Sepulveda**, 144 A.3d at 1273. However, upon remand, PCRA counsel requested permission to amend the petition to include additional claims not raised in the first petition. **Id.** at 1276. The PCRA court granted counsel's request, although it ultimately denied relief on the new claims. **Id.** at 1277. As noted above, the Supreme Court held the PCRA court did not "have the authority or discretion to permit [the] petitioner to raise new claims outside the scope of the remand order and to treat these new claims as an amendment to [the] adjudicated PCRA petition." **Id.** at 1280.

- 11 -

records, she could have discovered the purported agreements sooner with due diligence. *See Shiloh*, 170 A.3d at 560. Our review of the record confirms Appellant is entitled to no relief.

At the PCRA hearing, Stitely confirmed the statement she made in her affidavit. When asked why she agreed to speak with Trooper O'Shea about the case against Appellant, she replied:

> Cause he told me that if I would cooperate, that he knew that we had a young son at home, me and my boyfriend at the time. We were all locked up and he knew I had a young son at home. So he said he would help get [my boyfriend] Carroll released so he could be home with our son.
>
> \*       \*       \*
>
> [Trooper O'Shea also said i]t would help me out in the long run if I would cooperate. He knew I was a drug user.

N.T., 3/27/18, at 32. When further pressed if she expected a lesser sentence in exchange for her cooperation, Stitely replied, "[a]t the time, no." *Id.* at 39. Although she acknowledged she "was hoping for a lesser sentence," Stitely testified there was no specific agreement in place. *Id.* at 40-41. Moreover, while Stitely claimed her boyfriend was released at his bail review hearing as promised,[14] Appellant did not produce any evidence, absent Stitely's bald allegation, to support that claim. Appellant did not call Stitely's boyfriend, Commonwealth witness Carroll Lescalleet, to testify at the PCRA hearing, nor did she produce any court records to substantiate Stitely's

_____

[14] N.T., 3/27/18, at 36.

assertion that Lescalleet was released pursuant to her agreement with Trooper O'Shea. Furthermore, in her affidavit, Stitely attested that she spoke with Trooper O'Shea, "[w]ithin a week or two" of her June 15, 2010, arrest, and Lescalleet was released from prison (pursuant to their alleged agreement) on June 23, 2010. Appellant's Motion for Post Conviction Collateral Relief, 6/23/16, Attachment A, Stacey Stitely affidavit, 4/26/16, at 1-2 (unpaginated). However, Stitely did not testify at Appellant's trial until more than seven months later, on January 31, 2011. Indeed, at the PCRA hearing, she clarified that she met with Trooper O'Shea a second time, in October of 2010, when she agreed to **testify** against Appellant. ***See*** N.T., 3/27/18, at 34 (Stitely stating, "I didn't want to, but yes [I agreed to testify].") She also confirmed that there was no further discussion at that time about what the Commonwealth might do for her if she testified against her sister. ***Id.*** We fail to see how Stitley's **trial testimony** against Appellant was in exchange for the release of her boyfriend, an action that allegedly had occurred nearly seven months earlier. Thus, as the PCRA court determined, this claim fails because the "evidence provided by [Appellant] at the [PCRA] hearing confirmed the lack of any agreement between the Commonwealth and Stitely concerning her trial testimony." PCRA Ct. Op., 12/18/18, at 8.

Nevertheless, even if we were to agree that there was some form of consideration provided by Trooper O'Shea to Stitely in exchange for her testimony, and this consideration constituted a "newly discovered fact" that was previously "unknown to the petitioner," we conclude Appellant has failed

to demonstrate that this information "could not have been ascertained by the exercise of due diligence[.]" **See** 42 Pa.C.S. § 9545(b)(1)(ii).

Appellant insists she had no reason to investigate whether Stitely had a deal with the Commonwealth because Stitely denied any such deal in her trial testimony, and the prosecutor "did nothing to correct this testimony[.]" Appellant's Brief at 27-28. Furthermore, she emphasizes the discovery documentation she received did not indicate Stitely was promised specific consideration for her testimony. **See id.** at 26.

However, at the PCRA hearing, the Commonwealth produced an email, dated January 21, 2011 — 10 days before trial — sent from the prosecuting attorney, Brian Sinnett, Esquire, to Appellant's trial counsel, Warren Bladen, Esquire. **See** N.T., 3/27/18, at 52, Commonwealth's Exhibit 1. The email, stated, in pertinent part:

> To confirm my earlier conversation with you, please be advised that all of the following Commonwealth witnesses have been offered some form of consideration for their truthful testimony against your client [Appellant]:
>
> . . .
>
> Stacey Stitely
>
> . . .
>
> I will provide you with the precise terms of their plea agreements, if applicable, prior to trial.

**Id.** Attorney Sinnett testified that he recalled sending the email, but had no further discussions with Attorney Bladen regarding any plea agreements. N.T., 3/27/18, at 67. Attorney Bladen testified that although did not recall

receiving that email, he would have shared the information with Appellant before trial. ***See id.*** at 53, 55. Further, he acknowledged that he and Appellant did talk about the witnesses who were going to testify at trial, and he advised her those witnesses were "looking to help themselves out when they testify." ***Id.*** at 52.

Thus, despite Stitely's denial of any "plea agreement" at trial, Appellant had reason to investigate whether Stitely did, in fact, receive any consideration for her testimony. Had she done so, she could have obtained the transcript of Stitely's August 22, 2011, guilty plea hearing — which she attached to her PCRA petition and now relies upon as evidence an agreement existed — where the Commonwealth stated it was offering a sentence "slightly into the mitigated range as a result of [Stitely's] cooperation and her testifying in [Appellant's] case[.]"[15] Appellant's Motion for Post Conviction Collateral Relief, 6/23/16, Attachment B, N.T. Stitely Sentencing, 8/22/11, at 2. There is no basis for this Court to conclude Appellant could not have obtained her sister's sentencing transcript before Stitely sent Appellant her affidavit in April of 2016.

---

[15] For the reasons discussed ***supra***, this statement at Stitely's guilty plea hearing, again, does not establish that Stitely's testimony was **predicated** on Stitely's agreement with the Commonwealth as to her sentence.

Therefore, we conclude Appellant has failed to establish the "newly discovered facts" exception to the PCRA timing requirements, and, thus, the PCRA court properly dismissed her petition as untimely filed.[16]

Order affirmed.

_____

[16] We note, however, that even if we determined the information in Stitely's affidavit was a newly discovered fact that Appellant could not have ascertained earlier with due diligence, Appellant would still be entitled to no relief. At most, Stitely's assertion that she received "consideration" for her testimony constitutes impeachment evidence. An after-discovered evidence claim under Section 9543(a)(2)(vi) is not cognizable if the evidence is used "solely to impeach credibility." **Burton**, 158 A.3d at 629 (citations omitted).

Furthermore, if we consider the affidavit in the context of a **Brady** violation — *i.e.*, that the Commonwealth failed to disclose its agreement with Stitely — Appellant cannot demonstrate that she was prejudiced. **See Commonwealth v. Selenski**, 228 A.3d 8, 20 (Pa. 2020) ("A **Brady** violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant.") (citation omitted). Although impeachment evidence may support a **Brady** violation, "[i]n order to prove prejudice, [a defendant] must show a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" **Commonwealth v. Bomar**, 104 A.3d 1179, 1189 (Pa. 2014). In its February 9, 2017, opinion, filed before this Court's remand, the PCRA court determined "the trial testimony reveals overwhelming evidence of Appellant's guilt . . . includ[ing] inculpatory testimony from numerous co-conspirators, law enforcement observation of controlled substance deliveries by Appellant, large quantities of cocaine found on Appellant's property, and unaccountable case, assets, and other proceeds enjoyed by Appellant." PCRA Ct. Op., 2/9/17, at 7. Indeed, the court found it was "unfathomable to conclude that this information [impeaching Stitely's credibility] would have compelled a different result." **Id.** We find no reason to disagree.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2020